HIGGINS, Justice.
 

 The relator appealed from the judgment of the district court denying his applica-' tion for a writ of mandamus and dismissing the suit in which he sought to have the court order the State Superintendent of Public Education to recognize him as the State Supervisor of Vocational Agriculture and to have his salary paid, alleging that the State Superintendent of Public Education was without authority to remove him from his employment. The case presents strictly a question of law.
 

 After thoroughly considering the record .and the authorities, we have concluded that the able district judge correctly interpreted and construed the law and properly applied it, as appears from his written opinion, which we adopt:
 

 “The relator alleges that during the month of October, 19„_, he was employed by the Louisiana State Board of Education as State Supervisor of Vocational Agriculture in the Division of Vocational Education, and that he has served in said capacity from that time to the present time.
 

 “He further .alleges that he has served without compensation as the State Director of Food Production War Training for the
 
 *722
 
 Division of Vocational Education of the State Department of Education in said division since 1942.
 

 “He-alleges that on February 17, 1945, John E. Coxe, State Superintendent of Public Education attempted to remove him from his aforesaid employment by addressing to him a letter purporting to dismiss and discharge him therefrom, effective March 1, 1945; that the said Coxe has caused your relator’s desk to be removed from the office heretofore assigned to him, and is attempting to prevent him from entering the said offices and performing the duties of his said employment.
 

 “Relator avers and alleges that the attempt of the said Coxe, State Superintendent of Public Education, to remove him from his said position is null, void and of no force and effect for the following reasons:
 

 “ T. That the said action of John E. Coxe, State Superintendent of Public Education, did not have the prior approval of Louisiana State Board of Education.
 

 “ ‘2. That such approval was necessary for the reasons that:
 

 “‘(a) Section 6 of Article XII of the Constitution of Louisiana provides that “the State Board of Education shall have supervision and control of all free public schools”;
 

 “ ‘(b) That Section 4 of Article XII of the Constitution of Louisiana provides that “the Legislature shall prescribe the duties of said [Louisiana State Board of Education] and define its powers”;
 

 “ ‘(c) That Section 3 of Act No. 100 of 1922 authorizes and directs the State Board of Education to provide the necessary employees in the several divisions of the public school system, including that of Vocational Education, and that under said provision of said section, there is no authority for the State Superintendent of Public Education to discharge your petitioner from his said employment without the approval of the Louisiana State Board of Education.
 

 “‘(d) That Louisiana State Board of Education, at a meeting thereof held on the 3rd day of March, 1945, adopted its resolution retaining your petitioner in his said position, all as will more fully be shown upon the trial hereof.’
 

 “In the alternative and only in the event that the Court should hold that by the provision of Section 3 of Act No. 100 of 1922, viz, ‘The State Superintendent of Public Education shall select the employees in the various divisions herein established,’ the said Superintendent had the authority to discharge relator, the aforesaid provision of said Act violates Section 6 of Article XII of the Constitution, providing that the ‘State Board of Education shall have supervision and control of all free 'public schools,’ vocational education in Louisiana being essentially a part and parcel of the system of free 'public schools; and for the further reason that if so interpreted it would be irreconcilable with the provision in the same section Which is in strict accordance with the Constitution, that the State Board of Education ‘is authorized and directed to
 
 *724
 
 provide the necessary employees in’ the three divisions of education enumerated by Section 3 of Act No. 100 of 1922, including the department of vocational education.
 

 ■ “Further, in the alternative, and only in the event that it should be held that Section 3 of Act No. 100 of 1922 providing that the State Superintendent shall select the employees of the several divisions of education provided in said Act, is constitutional and vests in the Superintendent the power to discharge relator, the only system of vocational education established in this State at the time of the passage of Act No. 100 of 1922, and since, is a system that is established pursuant to laws enacted by the Congress of the United States, which have been accepted by the State of Louisiana, viz.:
 

 “ ‘1.
 

 " ‘(a) Public Law No. 347 of the 64th Congress (U.S.C.A., Title 20, Secs. 11 to 29, inclusive, as amended, — See Pocket Part, 20 U.S.C.A.), being “an act to provide for the promotion of vocational education; to provide for cooperation with the States in the promotion of such education in agriculture .and the trades and industries; to provide for cooperation with the States in the preparation of teachers of vocational subjects; and to appropriate money and regulate its expenditure,” ap-' proved February 23, 1917, known as the Smith-Hughes Act, providing for appropriations of Federal Funds for vocational education on a permanent, continuing basis, which said Act was accepted by the State of Louisiana by Act No. 52 of 1918.
 

 “ ‘(b) The George-Reed Act (Public No. 702, 70th Congress, 45 Stat. 1151, approved February 5, 1929), authorizing further appropriations for vocational education and extending the benefits of Federal Aid for vocational education to the territories.
 

 “ ‘(c) The George-Ellzey Act (Public No. 245, 73rd Congress, 48 Stat. 792, approved May 21, 1934), authorizing further appropriations for vocational education and providing for increased aid for trade and industrial education.
 

 “ ‘(d) The George-Deen Act (Public No. 673, 74th Congress) approved June 8th, 1936, authorizing on a permanent basis increased appropriations to the State and Territories for vocational education in the fields already aided and in addition authorizing appropriations for use in.the field of the distributive occupations. (Title 20, Secs. 15h to 15p, inclusive, U.S.C.A.)
 

 “‘(e) Public Law No. 647 of the 77th Congress, Chapter 475, 2nd Session, 56 Stat. 562; Public Law No. 135, 78th Congress, 1st Session, 57 Stat. 494; and Public Law No. 373, 78th Congress, 2d Session, 58 Stat. 547, all relative to education and training of defense workers for National defense.
 

 “‘2.
 

 “‘(a) That said Act No. 52 of 1918 includes all of the provisions required of the State of Louisiana by said Smith-Hughes Act, including Sections 4 .and 5 of said Act No. 52 of 1918, viz:
 

 “ ‘Section 4. * * * That the State Board of Education, together with the representatives of the Federation of Labor
 
 *726
 
 shall have full power to represent the State in any and all matters in reference to the expenditure, distribution and disbursement of funds received from the United States Government in said State and to appropriate and use said moneys in whatever way will in its discretion best subserve the interests, of the State and carry out the spirit and intent of said act of Congress in conformity with its provisions.
 

 “ ‘Section 5. * * * That such Board is hereby authorized to make such expenditures for the actual expenses of the Board for the salaries of assistants and for such office and other expenses as in the judgment of the Board are necessary to the proper administration of this Act.’
 

 “ ‘(b) That in connection with appropriations by the Congress in aid and support of such vocational education and for other educational purposes, Section 35 of Act No. 100 of 1922 provided that “The State Board of Education shall, have authority to receive and use for public school purposes any Federal or other funds from out-of-state sources which in the judgment of the Board should be accepted and can be wisely used.”
 

 '“(c) That in connection with appropriations by the Congress in aid and support of such vocational education, Section 14 of Article XII of the Constitution of Louisiana, as amended by Act No. 76 of 1934, provides: “In addition to the state funds for the support of the public common schools, as above provided for, the following funds are recognized to be therefor and shall be distributed and paid out to the several parishes, under the authority and jurisdiction of the State Board of Education, and in accordance with the terms of the law governing such funds or the valid stipulations of the source thereof, to-wit: * * * 3. Appropriations made by the Federal Board of Vocational Education: * * * 5. All such other educational funds as the Legislature may provide or as may be otherwise received for educational purposes.”
 

 “ ‘(d) So that the State Board of Education has. been effectively designated as the Board to administer the vocational education for which the Smith-Hughes Act provides, and to that extent Sections 4 and 5 of Act No. 52 of 1918 have been amended.
 

 “ ‘(e) That Section 8 of the Smith-Hughes Act (Public Law No. 347, approved February 23, 1917, U.S.C.A., Title 20, Sec. 18), and all acts of Congress subsequently thereto appropriating money to the States for the Purposes of the Smith-Hughes Act,' require the Louisiana State Board of Education, in order to secure the benefits of such .appropriations, to submit to the Office of Education, Federal Security Agency, plans for vocational education, for approval if the said agency of the United States finds such plans to be in conformity with the provisions and purposes of the Act of Congress (the functions of the Federal Board for Vocational Education having been transferred by Executive Order No. 6166, Sec. 15, to the Department of the Interior, on June 10, 1933, by Reorganization Plan No. I, effective July 1, 1939 (4 Fed.Reg. 2728, 53 Stat. 1424), from the Department of the
 
 *728
 
 Interior to the Federal Security Agency— Note to Title 20, Sec. 11, Pocket Part to Title 20-21, U.S.C.A.).
 

 “ ‘(f) That in accordance with said requiiement, the Louisiana State Board of Education has submitted its current plan for vocational education for the five-year period, 1942 to 1947, inclusive, which has been approved by the Office of Education, Federal Security Agency, and is now in force and effect, as will be fully shown on the trial hereof.
 

 “ ‘(g) That in Part I of said state plan for Vocational Education in Louisiana, entitled “State Administration and Supervision,” it was provided by the Louisiana state Board of Education:
 

 “ ‘(A General Direction.
 

 “ ‘The general direction of vocational education in the State of Louisiana is vested in the State Board of Education.
 

 “ ‘Which said ■ plan has been approved by the Federal Security Agency.
 

 “ ‘(h) That it is necessary that the Federal grants to the State of Louisiana under the said Acts of Congress be matched in the required proportions by State or local funds, or both, for each of the purposes of vocational education specified by Congress; and that the State of Louisiana, up to the date of the attempted dismissal of petitioner, had matched, in the amounts required by said Acts of Congress and the Office of Education of the Federal Security Agency acting in. compliance therewith, all funds paid to the State of Louisiana or the, Louisiana State Board of Education for vocational education pursuant to the said acts of Congress under the authority of which such federal funds were appropriated, and has appropriated money for the continued matching of such federal grants for vocational education by Item 5 of Schedule 97 of Act No. 44 of 1944, § 4, p. 107, Acts of 1944, and Act No. 307 of 1944; and that when the Federal funds have been granted and matched as required by the State, this combined fund constitutes the wherewithal for the maintenance of the only system of vocational education established in the -State of Louisiana, which is under the cooperative supervision of the Office of Education of the Federal Security Agency and the Louisiana State Board of Education, and that your petitioner’s salary is wholly paid from said combined,fund.
 

 “ ‘(i) That the said federal authorities in charge of the administration of federal aid to vocational education in the State of Louisiana have exacted that the Louisiana State Board of Education retain full authority to employ the persons necessary to carry on vocational education in the State of. Louisiana, and that the Louisiana State Board of Education is exclusively vested with such authority to employ and with the authority to discharge such employees.
 

 “ ‘(j) That, therefore, the attempted dismissal of petitioner by John E. Coxe, State Superintendent of Public Education, was and is null, void and of no force or effect for the reasons alleged in this Article XVI .and for the further reason that only the Louisiana State Board of Education had the authority to dismiss your peti
 
 *730
 
 tioner from his said employment, and that if effect be given to the said attempted dismissal of your petitioner, it would violate the said Acts of Congress, the Supreme law of the land and Article VI of the Constitution of the United States providing that Acts of the Congress shall be the supreme law of the land, and would deprive your petitioner of his property without due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Section 2 of Article I of the Constitution of the State of Louisiana.’
 

 “Relator alleges that under the law, particularly Section 35 of Act No. 100 of 1922, Section 1 of Title II and Title VII of Act 111 of 1942 ‘it is the mandatory duty of John E. Coxe, as Superintendent of Public Education and as Executive Officer of the State plan for Vocational Education in Louisiana 1942-1947, to take whatever action may be necessary to place your petitioner’s name upon the payrolls of the State Board of Education as of March 1, 1945, and to authorize Herman J. Hoorman, Controller of the Department of Finance, and James S. Reilly, Commissioner of Finance, ■ to issue the necessary warrants for the continued payment thereof as long as petitioner is employed in his present capacity as State Supervisor of Vocational Agriculture.’
 

 “The sum and substance of the complaint is that he was lawfully, employed by the .State Board of Education; that Coxe for the reasons above stated had no authority to discharge him; that he has not been paid that part of his salary of $5,000.00 earned since March 1, 1945, and that it should be decreed that he lawfully occupies the office of State Supervisor of Vocational Agriculture in the division of' Vocational Education and that the proper officials, including Coxe, should be ordered to pay that part of his salary earned since March 1, 1945.
 

 “The defendant Coxe before answering, filed the exception of no right of action and no cause of action; and, thereafter, reserving all rights under said exception, filed his answer.
 

 “In his answer Coxe admits that relator has served as State Supervisor of Vocational Agriculture from October 1932 until February 17, 1945, and as State Director of Food Production, War Training in the Division of Vocational Education of the State Department of Education from August, 1942 until February 17, 1945,
 
 ‘under several appointments by the State Superintendent of Public Bdivcation.’
 

 “He also admits relator’s discharge, as alleged; he denies however, that he was without authority to discharge relator.
 

 “He further denies that the system of Vocational Education referred tp in paragraph XVI of relator’s petition is the only system of Vocational Education established in the State and that said system is under the cooperative supervision of the Office of Education of the Federal Security Agency and the Louisiana State Board of Education.
 

 “The defendants HoormanI Assistant Controller, Reilly, Director’ of Finance and Tugwell, State Treasurer, each filed an
 
 *732
 
 answer to the petition of relator, submitting the question raised by relator and Coxe to the Court.
 

 “Entering the case as amicus curios is the well-known law firm of White, Holloman and White of Alexandria.
 

 “Based upon the assumption and belief that it alone has the right to employ and discharge employees of the Department of Education, the State Board of Education, on Mar. 3, 1945, adopted a resolution, retaining relator in his position ‘pending investigation.’ A certified copy of this resolution was offered in evidence. Relator’s present status therefore is that he has been dismissed by Coxe and retained by the Board.
 

 “Opinion
 

 “The fact of relator’s employment as State Supervisor of Vocational Agriculture in the Division of Vocational Education by a former State Superintendent of Public Education is admitted. It is .not admitted however, that relator was ever employed as such by the State Board of Education or that, after he was employed by the State Superintendent of Public Education his said employment was approved by the State Board of Education.
 

 “In testimony of relator pertaining to his employment there is the following:
 

 “T was an Assistant Supervisor of Vocational Agriculture and Superintendent T. H. Harris, who was Executive Officer of the State Board for Vocational Education at that time, called me in and * * * told me that he was appointing me as State Supervisor of Vocational Agriculture, subject to the approval of the State Board.’
 

 “Continuing he testified as follows:
 

 “ ‘My office was right beside the Board. Room on the eleventh floor of the State Capitol, and at one of the meetings after that I walked over to the door and someone said, “they are mentioning your name; and I stuck my head in and heard Mr. Harris make mention of the fact that Mr. Guilbeau had resigned and he had employed me as supervisor and hoped it met with their approval.” ’ ”
 

 “The record is barren of any other evidence relating to any participation in relator’s employment by the State Board of Education. The fact that such employment was
 
 satisfactory
 
 to said Board will be presumed, in view of the many years relator has served in this capacity and in view of the resolution referred to.
 

 “Relator’s demand is that the defendant Coxe be directed ‘to take whatever action as may be necessary to place the name of Shelby M. Jackson as State Supervisor of Agriculture of the State Board of Education upon the payrolls of the State Board of Education.’
 

 “The relief prayed for can be granted' only in the event the conclusion is reached that under the law, the State Board of Education, and not the State Superintendent of Public Education has the power and authority to employ and discharge thi employees of the State Department of Education, and particularly employees in th<* Division of Vocational Education.
 

 
 *734
 
 “Section 1 of Article XII of the Constitution of 1921, as amended by Act No. 320 of 1944 reads in part as follows :
 

 “ ‘The educational system of the State shall consist of all public schools, and all institutions of learning, supported in whole or in part by appropriation of public funds.’
 

 “Section 4 of the same Article reads as follows:
 

 “ ‘The Legislature shall prescribe the duties of said board and define its powers; provided, that said board shall not control the business affairs of parish school boards, nor the selection or removal of their officers and directors.’
 

 “Section' 5 of said Article as amended by Act No. 105 of 1922 reads as follows:
 

 “ ‘There shall be elected by the people at each succeeding general election a State Superintendent of Public Education, who shall be ex-officio Secretary of the Board, and whose salary shall be fixed by the State Board of Education at no less than Five Thousand ($5,000.00) Dollars, nor more than Seven Thousand Five Hundred ($7,500.00) Dollars, payable monthly on his own warrant.’
 

 “Section 6 reads:
 

 “ ‘The State Board of Education shall have supervision and control of all free public schools.’
 

 “Section 8 reads:
 

 “ ‘It shall not create or maintain any administrative department in which salaries of expenses are payable from State funds, unless authorized b> the Legislature. The Legislature shall prescribe the terms under ■which funds offered for educational purposes shall be received and disbursed.’
 

 “Pursuant to the provisions of Section 4 of Article XII, by which the Legislature is charged with the duty of
 
 defining the powers
 
 of the State Board of Education, Act No. 100 of 1922 was passed. The title to said Act is as follows:
 

 “ ‘To provide a State Board of Education and Parish School Boards,
 
 defining their duties and powers, and providing for the administration and supervision of the public schoo7' of Louisiana.’
 

 “Section 3 of. said Act reads as follows:
 

 “ ‘The following divisions of the State Department of Education are recognized and the State Board of Education is authorized and directed
 
 to provide the necessary employees in them,
 
 the salaries and expenses of whom shall be paid out of appropriations made' by the Legislature, and such other sources as may be available:
 

 “ ‘A.Division of Educational Supervision.
 

 “ ‘B.Division of Teacher Training and Certification.
 

 “ ‘C.Division of Vocational Education.
 

 “ ‘The State Superintendent of Public Education
 
 shall select the employees in the various divisions herein established.
 
 It shall be the duty of the Legislature to provide at the seat of government the necessary offices having all needed equipment for the State Superintendent of Public Education, and to make provisions for postage, stationery, and other necessary expenses of the office',' the cost of which
 
 *736
 
 must be within the limits of an appropriation for that purpose.’
 

 “The basis of relator’s demand is (1) that in Section 6 of Article XII of the Constitution, it is provided that:
 

 “ 'The State Board of Education shall have supervision and control of all three public schools’ * * *.
 

 “And (2) that in the first part of Section 3 of Act No. 100 of 1922, it is provided :
 

 “ 'The State Board of Education is authorized and directed to
 
 provide
 
 the necessary employees in them,’ referring to the three divisions of the State Department of Education named in said section.
 

 “The defendant, State Superintendent of Public Education, on the other hand relies upon the first part "of the last paragraph in said Section 3 which reads in part as follows:
 

 “ ‘The State Superintendent of Public Education shall
 
 select
 
 the employees in the various divisions herein established.’
 

 “Relator’s counsel contend that the foregoing Section 3 of Act No. 100 of 1922 should be interpreted to mean that while the State Superintendent has the 'right to select employees of the Department of Education from' a list of names submitted by the State" Board of Education,
 
 the person actually selected should be approved by the State Booh'd which is clothed' by the same Section' '3 to provide such employees,'‘and which und^y Section 6 of Article 'XII "of 'the Constitution has csupervision and control of all free public schools’ of the State.
 

 “If Section 3 of the Statute is interpreted to mean that the State Superintendent of Public Education has the sole power to hire and fire employees of the Department of Education, they contend that said Section 3 is violative of Section 6, Article XII of the Constitution.
 

 “The first step to take in inter-' preting Section 3 of Act No. 100 of 1922 is to consider the accepted meaning of the word
 
 ‘provide’
 
 used in the first part of Section 3, and the word
 
 rselecf
 
 appearing in the last part thereof.
 

 “In Words and Phrases, Vol. 34, Permanent Edition, p. 666, we find:
 

 “ ‘In Webst.Dict., “to provide” is defined, “To make ready for future use; to furnish; to supply.” Ware v. Gay, 28 Mass. [106-109] 11 Pick. 106-109.’
 

 “Again, at page 668 of the same volume, we find:
 

 “ ‘The primary meaning of the word “provide” is “to look out for in advance, to procure before hand; to get, collect or make ready for future use; to prepare.” ’
 

 “In Vol. 38 of Words and Phrases, Perm. Ed., page 532, we find the following definition of the word ‘select’:
 

 “ ‘The word “select,” when used by a city mayor in appointing a person to an office, is equivalent to the word “appoint”. People v. Fitzsimmons, 68 N.Y. 514-519.’
 

 “At page 529, same volume of Words and Phrases, we find:
 

 
 *738
 
 “ ‘To “select” is to pick out or choose. It signifies a choice of one out of more than one. Petersburg School District of Nelson County v. Peterson, 14 N.D. 344, 103 N.W. 756-758.’
 

 “[See also: Commonwealth v. School Board of City of Norfolk, 109 Va. 346, 63 S.E. 1081, 1082; Clarke v. Commonwealth, 159 Va. 908, 166 S.E. 541; People v. Mosher, 45 App.Div. 68, 61 N.Y.S. 452, 454; City of Savanna v. Robinson, 81 Ill.App. 471; Booth v. State, 179 Ind. 405, 100 N.E. 563, 566, L.R.A.1915B, 420, Ann.Cas.1915D, 987.] (Brackets ours.)
 

 “It will be conceded that Section 3 of the Act in question with respect to which of the two, the Board or the State Superintendent, has the authority to employ and discharge employees in the office of the State Superintendent, is confusing.
 

 “Considering the two words involved,— that is the word
 
 ‘provide’
 
 and the word
 
 'select ’
 
 I am of the opinion that what the Legislature intended was that the State Board has the authority to create the various positions of employment in the Department of Education, and that after their creation, the Superintendent has the right to pick out or name the occupant of the position so created. To hold otherwise, in my opinion, would make the Superintendent a mere figurehead without control over the affairs of his own office. Such a situation, to say the least, would not be conducive to efficiency or discipline within the Department.
 

 “In Section 34 of Act No. 100 of 1922, we find the following:
 

 “ ‘In the prosecution of this work of inspection and
 
 supervision,
 
 the various employees of the State Department of Education shall be under the immediate direction and
 
 control
 
 of the State Superintendent of Public Education, and they shall make such verbal and written reports to him as he may require.’
 

 “Most assuredly the foregoing portion of Section 34 does not leave the Superintendent an impotent, helpless employee of the State Board, without authority to control the- activities of his office help. On the contrary, it clothes him with the authority to
 
 control
 
 his employees. If he has the power to
 
 control,
 
 it follows, as night the day, that he can appoint these employees and discharge them at will. Any other construction, in my opinion, would be contrary to the letter and spirit of the Act.
 

 “If the
 
 selection
 
 of employees by the Superintendent was intended to be subject to the approval of the State Board, it is strange that after the word ‘select’ the Legislature did not add ‘subject to the approval of the State Board of Education.’
 

 “We come now to the constitutional question raised, that is, that the interpretation I have given Section 3 of the Act brings it in conflict with Section 6 of Article XII of the Constitution.
 

 “The rule of interpretation of an ambiguous statute is that, if one interpretation would make it valid legislation and another would violate the Constitution, the interpretation which makes it valid legislation should be adopted. Succession of
 
 *740
 
 Greenlaw, 148 La. 255, 86 So. 786; City of Shreveport v. Bayse, 166 La. 689, 117 So. 775; State v. Malory, 168 La. 742, 123 So. 310; Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183; State ex rel. Huggett v. Montgomery, La.App., 167 So. 147.
 

 "There is another rule and it is this: Upon a doubtful construction of a provision of the Constitution, the doubt should be solved in favor of validity. Lobrano v. Police Jury, 150 La. 14, 90 So. 423; State v. Coco, 152 La. 241, 92 So. 883; State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72.
 

 “Section 6, Article XII, previously quoted is as follows:
 

 “ ‘The State Board of Education shall have supervision and control of all free public schools.’
 

 “This article was not left by the framers of the Constitution unqualified. On the contrary, under Section 8 of Art. XII it is provided that the State Board of Education shall not create or maintain any administrative department in which
 
 salaries
 
 or
 
 expenses
 
 are payable from State funds,
 
 unless mthorized by the Legisla-ture.
 
 Likewise, it is prohibited from interfering with the business affairs of parish school boards as well as with the officers and directors of such boards. See Sec. 4, Art. XII.
 

 “The argument is made that, except for these and other express limitations, the control of the State Board is supreme and reaches so far as to clothe the Board with complete power of supervision of the affairs of the office of State Superintendent.
 

 “I can not agree. In the first place Section 6, Art. XII is to be considered in connection with Section 4 of the same Article. Section 4 confers upon the Legislature the right to prescribe
 
 !the duties of said board cmd define its powers.1
 

 "With respect to employees in the State Department of Education the Legislate e has done that very thing, i. e., given the Board the power to
 
 'provide
 
 the necessary employees in said Department, that is to say, the power to say what positions of employment shall exist in said Department with the right of the State Superintendent of Public Education to appoint the occupants of these positions.
 

 “If the Legislature has the right under Section 4 of Article XII to prescribe the duties of the State Board, how can it be said that it is violative of the Constitution for it to deny the Board the right to control the appointment of employees of a constitutionally created official of the State, the Superintendent of Public Education ?
 

 “That portion of Act No. 100 of 1922 conferring upon the State Superintendent the right to ‘select’ employees of the Department of Education, in my opinion, is in effect, a refusal of the Legislature, acting under Section 4 of Art. XII to include • that prerogative among ‘the duties of said board’.
 

 “I can see no similarity of this case to the case of State ex rel. Dodd v. Tison, 175 La. 235, 143 So. 59. There the authority of the State Board was recognized
 
 *742
 
 as final by virtue of Section 6 of Act No. 100 of 1922 expressly clothing the State Board with the power of administration over the Louisiana State Normal College and other educational institutions of the State; nor do I accept as applicable here, the argument that the
 
 control
 
 the State Board has under the Constitution of ‘all free public schools’ and over the State Department of Education, is to be likened to the control and supervision the Supreme Court of the State has over the inferior courts.
 

 “For the reasons assigned, I hold (1) that Section 3 of the Act confers upon the State Superintendent of Education the general power of appointment of employees in the State Department of Education, as well as the power to discharge such employees; and (2) that that part of Section 3 of Act No. 100 of 1922 conferring this authority upon the State Superintendent of Education is not violative of Section 6 of Art. XII of the Constitution, in view of Section 4 of the same article giving the Legislature the power and authority
 
 to prescribe the duties of the State Board of Education and define its powers.
 

 “The authority to select or appoint the employees of the State Department of Education having been by Sec. 3 of Act No. 100 of 1922 vested in the State Superintendent of Public Education, in my opinion, no State Plan for Vocational Education adopted by the State Board of Education could legally divest him of such authority. To hold that the State plan adopted by' the State Board and approved by the United States Office of Education governs notwithstanding Sec. 3 of Act No. 100 of 1922 would in effect be to hold that the- adoption of this plan by the State Board of Education had the effect of repealing the provisions of an act of the Legislature.
 

 “The Constitutional provision (Art. XII, Sec. 14, Const.) that all appropriations made by the Federal Government for Vocational Education ‘shall be distributed and paid out to the several parishes, under the.authority and jurisdiction of the State Board of Education, and in accordance with the terms of the law governing such funds or the valid stipulations of the source thereof’ will not necessarily be impaired or violated simply because the person chosen as Supervisor of Vocational Agriculture is appointed or selected by the State Superintendent of Education.
 

 “In my opinion it is not necessary to decide the question of the constitutionality of that part of Sec. 35 of Act No. 100 of 1922 providing that all funds received for public school purposes from the Federal Government shall be deposited by the State Superintendent of Public Education in the bank paying the highest rate of interest on daily balances. Regardless of .how this question should be decided it would have no bearing on the sole issue presented by the pleadings in this case which is,
 
 who has the authority under the law to appoint and discharge the employees of the State Department of .Public Editcation.
 

 “It can be well conceded that under, the provisions of both Act No. 52 of 1918 and
 
 *744
 
 Act No. 100 of 1922 the State Board of Education has the authority to
 
 receive
 
 for public school purposes all funds appropriated to the State by the Federal Government, and that regardless of where these funds are deposited, that is, with the State Treasurer or by the State Superintendent of Education in the bank paying the highest rate of interest, and that the said funds must be
 
 used
 
 by the State Board of Education for the purpose for which they are appropriated, yet it does not follow that the State Board has the right to hire .and fire the Supervisor of Vocational Agriculture who without doubt is an employee in the State Department of Education in the Division of Vocational Education.
 

 “As a matter of policy, it would doubtless be wise that the authority having the right to receive and expend such funds, should also have the statutory right to select the agents and employees of the State Department of Education charged with the duty of supervising and administering vocational education in the State. That however, is a matter which addresses itself to the Legislative and not the judicial branch of the Government.
 

 “For the reasons assigned, the demand of petitioner for a writ of mandamus will be denied and this suit will be dismissed at plaintiff’s cost.”
 

 Obviously, one of the practical considerations that influenced the Legislature to grant the power and authority to the State Superintendent of Public Education to employ and discharge those employed under him in the . Department is because . the members of the State Board of Education, who serve without receiving any salary, regularly meet three or four times a year only, unless a special meeting is called, whereas, the State Superintendent of Public Education is a full-time official. Therefore, where it is necessary to select or employ a person to fill a vacancy or to discharge an employee, the members of the Board from different parts of the State would not have to be called together for those purposes. The Superintendent being in constant daily touch with the administration of the free public school system or Department of Education could act promptly and without expense and inconvenience to the members of the Board in having them assembled.
 

 It is contended that under the construction placed upon the law by the aistrict court recognizing the Superintendent’s authority to hire and discharge employees of the Department under him that the State Board has been divested of the exclusive control of the public school system of the State granted to it by the Constitution. It will be observed that the Constitution expressly denies the State Board the right to employ or discharge the great part of the personnel of the public school system and vests the authority to do so in the local Parish School Boards. Plainly, the overwhelming majority of those who serve under the supervision and control of the State Board of Education are those who are employed by the local Parish School Boards — consisting of teachers, Parish Superintendents of Education and their assistants, principals, etc. It is, therefore, incorrect to say that the
 
 *746
 
 Constitution granted exclusive control over -all phases of the administration of the public school system and that the right to hire and fire is indispensable to the control granted by the Constitution to the State Board. The members of the Legislature were bound to take cognizance of the limitation placed in the Constitution itself upon the control granted the State Board and the provision granting the Legislature the right to define the powers -and duties of the State Board. In acting under this constitutional grant of authority, the Legislature simply granted certain powers and duties to the State Board, which give it the type of control and supervision contemplated by the Constitution and granted authority to the State Superintendent for administrative functions which were considered necessary for the proper operation of the school system. A reading of the statute (Act No. 100 of 1922) dearly shows the tremendous amount of ■duties, responsibilities, and administrative functions entrusted to the State Superintendent and the necessary power and authority granted him to carry them out.
 

 It is also argued that since the .State Superintendent, under the law, was appointed by the State Board at the time that Act No-. 100 of 1922 was passed by the Legislature, it was the intention of the framers of the law to grant the State Board the authority to hire and fire all ■ of the subordinates of the State Superintendent, as the Board had-that authority over him. The weakness in this logic is that -it- ignores the wording of -the statute .as well as the practical reasons why the members of the Legislature granted to the State Superintendent the authority of employing and discharging those who serve under him, because it was impracticable to have the members of the Board meet every time it was necessary to hire or fire some employee in the Department, as we have previously observed. The trial court interpreted the statute in the light of the status of matters at the time the Act of the Legislature was enacted and did not base its construction upon the constitutional amendment passed in 1922, making the State Superintendent elected and ex-officio Secretary of the Board, instead of being appointed by the State Board. Clearly, this constitutional amendment was to give the State Superintendent further independence of the Board and certainly did not take away from him any previous power that the Legislature had granted to him.
 

 It appears thaf this is the first time since the Legislature passed Act No. 100 of 1922 that the State Superintendent of Public Education’s authority to select, employ, or discharge those who serve under him, has been challenged. In short, for a period of twenty-three years, the administrative interpretation of the statute has been the same as asserted by the respondent during his tenure in office of nearly six years. Therefore, under the doctrine of contemporaneous construction, this interpretation should be followed. State v. Standard Oil Co. of Louisiana, 190 La. 338, 182 So. 531. The Court is powerless to change the wording of the
 
 *748
 
 law, that being a matter for legislative* consideration.
 

 For the reasons assigned, the judgment appealed from is affirmed at the relator’s costs.
 

 HAMITER, FOURNET, and HAWTHORNE, JJ., dissent.