347 So.2d 147 (1977)
BOARD OF ELEMENTARY AND SECONDARY EDUCATION of the State of Louisiana, et al., Plaintiffs-Appellees,
v.
J. Kelly NIX, Superintendent of Education, State of Louisiana, et al., Defendants-Appellants.
No. 58961.
Supreme Court of Louisiana.
April 11, 1977.
Rehearings Denied May 13, 1977.
Dissenting Opinion June 28, 1977.
*149 Arthur G. Thompson, Joe L. Smith, Shreveport, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Paul J. Ferlita, Asst. Atty. Gen., Chris J. Roy, Alexandria, Thomas A. Rayer, New Orleans, for plaintiffs-appellees.
TATE, Justice.
The issue of the present suit involves the constitutional relationship between the State Board of Elementary and Secondary Education, Article 8, Section 3, Louisiana Constitution of 1974, and the State Superintendent of Education, Article 8, Section 2.
The board sues for declaratory and injunctive relief based upon the alleged unconstitutionality of Louisiana Act 455 of 1976. It contends that the statute, by recognizing certain administrative powers in the superintendent, invades the board's constitutional authority to formulate educational policy for the state.
The board also contends that the 1976 general appropriations act unconstitutionally appropriated the board's operating expenses to the superintendent for transmission to it, rather than directly to the board itself.
The district court upheld the board's contentions. Since the trial court held that the statute and the legislative-condition to the appropriation were unconstitutional, the superintendent and his co-defendants [1] appeal directly to this court, as authorized by Article 5, Section 5(D)(1), Louisiana Constitution of 1974.
Within its constitutional context, the narrow issue before us is whether Act 455 of *150 1976, in spelling out administrative duties of the board and the superintendent, constitutes on its face a legislative infringement upon the board's constitutional power to decide policy for the public school system of the state.[2] For reasons to be elaborated, and subject to the implicit limitations noted below, with the exception of one provision thereof, we find no facial unconstitutionality of the statute. We therefore uphold its validity, with the noted exception of one provision.

I.
The central issues involve the constitutional relationship with regard to elementary and secondary education between the legislature, the board, and the superintendent, especially as delineated by Sections 1, 2, and 3 of Article 8.
The legislature is given the constitutional duty "shall establish and maintain a public educational system." Section 1.[3] The board is given the constitutional authority to "supervise and control the public elementary and secondary schools," with "budgetary responsibility for all funds appropriated or allocated by the state for those schools" "all as provided by law." Section 3(A).[4] (Italics ours.) The superintendent is "the administrative head of the Department of Education and shall implement the policies of the state board of elementary and secondary education and the laws affecting schools under its jurisdiction." Section 2.[5] (Italics ours.) Additionally, except where the constitution provides otherwise, the legislature may provide for powers, duties, and responsibilities of both board and superintendent. Sections 2 and 3 (footnotes 4 and 5).
The constitutional scheme evidenced by these provisions is:
The board is given the constitutional power to determine educational policy for the public schools of the state. In this regard, the superintendent's responsibility is to implement the policies adopted by the board. The superintendent is the administrative head of the department of education. However, for reasons to be set forth more fully below, the legislature is given the power by the constitution to provide for the allocation, as between the board and the superintendent, of administrative duties with regard to budgetary responsibility for, and supervision and control of, the public schools of the state.
We are re-enforced in this interpretation by the constitutional debates relied upon by the parties. These show:
During the constitutional convention, efforts were made to end the divided responsibility for public education shared by an elected board and elected superintendent.
*151 On the one hand, efforts to fix supervision and control solely in the superintendent were defeated. On the other hand, efforts to reduce the status of the superintendent to an appointee of the board were likewise defeated.[6]
The ultimate resolution of the delegates, reflected by the constitutional provisions above cited, was to recognize the board's ultimate responsibility for educational policy, free of legislative control over the composition and existence of the board; but likewise to recognize the elected superintendent's power and responsibility to administer public education as the administrative head of the state public educational system, subject to legislative designation of his administrative powers and duties. See: State of Louisiana Constitutional Convention of 1973, Verbatim Transcripts (39 Volumes; 1973-74) (hereinafter cited as Proceedings by date of debate and page numbers), especially at Proceedings (83rd day, November 10, 1973), 38, 68-70, 85-86 and (84th day, November 13, 1973) 29.
Nevertheless, the debates on Sections 1, 2, and 3 (and earlier drafts of them) resulted in no change of the sections insofar as they recognized the power of the legislature to determine "by law" (see II below) the precise details of budgetary responsibility and non-policy supervision and control shared by the board and the superintendent with regard to the public educational system of the state.

II.
Our trial brother held Act 455 of 1976 unconstitutional. He did so because he construed Sections 2 and 3(A) (quoted in footnotes 4 and 5 above) as granting the board exclusive supervision and control of the public educational system of the state.[7]
A proper construction of the article does, as the trial court held, permit a holding that the board possesses the constitutional power to decide educational policy as to matters within its jurisdiction. However, the sections also recognize the administrative function of the elected superintendent to implement these policies; while Section 3(A), by its express terms does not afford the board exclusive constitutional power and function with regard to administrative supervision and control of the educational system.
This section (quoted in full in footnote 4 above) provides that the board "shall supervise and control the public elementary and secondary schools, vocational-technical training and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law." (Italics ours.)
When used in this context, as it was in 103 other instances in the 1974 constitution, the term "provided by law" means "provided by legislation."[8] "Law is the solemn expression of legislative will." Louisiana Civil Code, Art. 1.
In the report of the styling and drafting amendments revising the delegate-passed initial drafts of provisions, frequent reference is made to this effect in explaining the substitution of the term "by law" for *152 deemed-equivalent expressions of "by the legislature" or "by statute". See, e. g., Proceedings: (113th day, January 9, 1974) 69[9]; (114th day, January 10, 1974) 48[10], 50[11], 54[12], 55[13].
We should note that the 1921 constitution likewise provided, Article 12, Section 6, that the predecessor board "shall have supervision and control of all free public schools." Nevertheless, because this power was likewise under the 1921 constitution qualified by the power of the legislature to prescribe duties of the board, see Article 12, Section 4, we held that the supervision-control provision did not grant the board exclusive control, nor could the board thereby assert its authority over administrative matters entrusted to the superintendent by the legislature. Jackson v. Coxe, 208 La. 715, 23 So.2d 312 (1945).
The 1974 constitutional provisions, and the constitutional debates, are devoid of any intent to alter this legislative power to allocate administrative supervision and control as between the new constitution's board and superintendent.
In this regard, it is significant that the present board's powers of administrative supervision and control are expressly to be "as provided by law," unlike those of other educational boards created by subsequent sections of Article 8. The powers of supervision and management granted three other educational boards over the state's colleges and universities are not qualified in this manner, see Article 8, Sections 6 and 7. As to them, distinguishably from the present board, there is thus a constitutional intent to confer upon such other boards self-executing (i. e., enforceable without supplementary legislation) and exclusive administrative authority over the institutions of learning within their jurisdiction. Student Gov. Ass'n of L. S. U. v. Board of Supervisors, 262 La. 849, 264 So.2d 916 (1972).[14]
In summary, therefore, as expressly recognized by Section 3(A), the legislature may determine, as between the superintendent and the board, the administrative budgetary responsibility for, and administrative supervision and control of, the public educational facilities and programs within their jurisdiction. However, in view of *153 the constitutional intent to confer ultimate policy-making power upon the board, the legislature may not in the guise of administrative regulation deprive the board of its constitutional policy-making duties and powers.
Stated another way, the most reasonable interpretation of Article 8, Section 3(A) is that the legislature shall provide by law for the supervision, control, and budgetary power of the board over elementary and secondary education. However, the constitutional provision cannot be interpreted to mean that the legislature can regulate and limit the constitutional power of the board to supervise, control, and budget elementary and secondary education.

III.
In the light of these principles, we now consider the board's attack upon Act 455 of 1976. The board contends that the statute is an invasion of its constitutional powers over secondary and elementary education and is therefore invalid.
The standard of judicial review is not contested: "A general principle of judicial interpretation of a state constitution is that, unlike the federal constitution, a state charter's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature." Hainkel v. Henry, 313 So.2d 577, 579 (La.1975). "In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit." In re Gulf Oxygen Welder's Supply Profit Sharing Plan, 297 So.2d 663, 665 (La.1974).

IV.
By Act 455 of 1976, the legislature amended and re-enacted provisions in La. R.S. 17:6, 7, 10, and 22. The amendments concerned the allocation of administrative functions between the board and the superintendent.[15] We set forth in full as Appendix "A" the provisions of this statute, for convenient reference, as well as to demonstrate the context in which the provisions below are discussed.
The board contends that the amendments infringe upon its constitutional power to determine educational policy for the public educational system of our state. We find, however, that the attacked provisions merely allocate administrative functions between the board and the superintendent for the reasons previously stated, within the constitutional authority of the legislature to do so.
We will note the provisions explicitly attacked by the board as an unconstitutional legislative invasion of its authority. We will then discuss briefly why, subject to the limitations below expressed by our opinion, these provisions are within the constitutional power of the legislature to allocate administrative functions between the board and the superintendent.
The provisions at issue are:
17:6A(11) provides that the Department of Education shall prepare certificates and diplomas and that they will be signed both by the president of the board and by the superintendent. By the 1974 constitution, the superintendent is the administrative head of the department. We cannot find any infringement upon the board's policy-making powers by the statutory requirement that the department prepare certificates and diplomas to be awarded pursuant to standards determined by the board, nor by the requirement that the superintendent sign same along with the board president.
17:6A(12) and (13) authorize the board to enter into contracts recommended by the superintendent for educational purposes. The provisions do not require the board to enter into the contracts merely recommended by the superintendent, nor does the statute prohibit the board from requiring amendment of them before approving them. (The last sentence of (12) further makes clear that the board may *154 enter into other contracts and agreements as deemed necessary by it to carry out its duties and functions.) We can see no constitutional defect in permitting the superintendent to recommend contracts for specific purposes, in performance of his constitutional duty to implement the policies of the board.
17:6A(14) authorizes the board to require from local superintendents of schools such reports as it deems necessary, but it also provides that such reports shall be sent through the state superintendent. The reports are to be furnished concerning matters determined by the board. The provision that they should be submitted to the board through the superintendent (who after all administers the Department of Education, pursuant to constitutional authority) is a legislative determination that collection of the reports should best be administered through facilities of the state department, rejecting a determination equally allowable under the constitution that the reports should be sent directly to the board (which then might have to employ additional administrative employees to process them) or else jointly to both superintendent and board. We can find no constitutional defect in this legislative determination. Of course, the legislation implicitly requires that the superintendent furnish the board these reports timely and in a manner deemed by the board to be appropriate for its performance of its constitutional policymaking function.
17:10A provides that the state department shall approve public educational facilities "in accordance with minimum standards submitted by the State Department of Education and approved by the board." Again, the board is empowered to approve or reject proposed minimum standards. Implied in the board's power of approval and rejection, is also its power to modify proposed standards in the same manner as if the board had itself initiated them.
17:10B, C, D, and E concern the administrative determination by the state department of whether public educational facilities meet the minimum standards determined by the board. Again, we do not find any unconstitutional invasion of the board's policy-making functions by the delegation of this administrative function to the department merely a legislative determination of an appropriate manner by which to administer the application of the board's standards to the educational units governed thereby.[16]
17:22(2) requires the superintendent to provide staff services for the board:
Subsection (a) requires the department to prepare certificates and diplomas which are to be awarded, however, in accordance with standards and requirements determined by the board.
Subsection (b) provides that the department will make recommendations on contracts and agreements, without derogating from the final authority of the board to enter into them or not. It also provides that the superintendent will administer federal funds for programs "approved by the board" within its jurisdiction.
Subsection (c) requires the superintendent to prepare and obtain reports "required by the board."
Subsection (d) requires the superintendent to prepare certain programs and budgets for adoption by the board and submission to the legislature once they have been adopted by the board. These provisions do nothing more than implement the policy *155 determinations of the board with regard to the minimum foundation program and the equitable allocation of foundation funds, La.R.S. 17:7(2), as well as its policy-making power to prescribe school books and materials of instruction, courses of study and rules, etc., La.R.S. 17:7(3), (4), and (5) (1975).
17:22(7) requires the superintendent to make an annual report concerning educational matters to the board, the governor, and the legislature. The reports are to concern "the condition of, the progress made, and the improvement needed in the public elementary and secondary schools." We are unable to find, as argued, that this provision indirectly attempts to usurp the board's power to determine educational policy. It simply permits the superintendent, an elected officer constitutionally mandated to administer the Department of Education, to report progress, needs, and deficiencies of the public school system to the legislature and the governor as well as the board.
In summary, we find the above provisions merely allocate administrative responsibilities between the board and the superintendent, within the constitutional authority of the legislature to do so. They do not, as argued, represent an unconstitutional impairment of the board's constitutional function of determining policy.

V.
A slightly different issue is presented by Section 2 of Act 455. This act repealed La.R.S. 17:6A(8) as enacted by Act 274 of 1975.[17] The repealed provision permitted the board to employ and fix the salaries and duties of "necessary staff to assist the board in administering its affairs."
The purpose of the deletion of this provision is described in the title of Act 455 as being "to repeal the authority of the board to employ and fix the salaries and duties of staff to administer its affairs and to provide that the superintendent shall provide staff services to the board."
As we have noted, there is no constitutional objection to the legislative provision that the superintendent provide staff services for the board in the respects noted by 17:22(2). Nevertheless, a different issue is presented when the legislature attempts to deprive the board of any staff whatsoever with which to accomplish its constitutional function.[18]
The board is conferred policy-making functions by the constitution. In the performance of these functions, it should not be required to rely upon staff services and personnel selected and employed by another agency. The personnel and their duties necessary for the board to perform its constitutional policy-determining function should be selected by the board itself. To accomplish its necessary functions, the board should not be required to rely upon employees whose loyalties and time may be subject to the direction of others, and who may be selected regardless of suitability to the board and furnished merely at the sufferance of another agency.
The legislature cannot deprive a constitutional agency of its ability to perform its constitutional function by depriving it of the means to do so. Branton v. Parker, 233 So.2d 278, 286-87 (La.App. 1st Cir. 1970), certiorari denied, 256 La. 359, 236 So.2d 497 (1970); State ex rel. Nunez v. Baynard, 15 So.2d 649 (La.App. 1st Cir. 1943). See also, State ex rel. Parish Board of Health of Calcasieu Parish v. Police Jury *156 of Calcasieu Parish, 161 La. 1, 108 So. 104 (1926).
The repeal of 17:6A(8) by Section 2 of Act 455 of 1976 is therefore unconstitutional.
However, by so holding, we do not mean to derogate from the legislature's power to allot administrative duties to the superintendent and the department rather than to the board as provided by 17:22(2), nor do we mean to imply that the board may unilaterally determine what employees are necessary for its performance of its constitutional function. The legislature, of course, itself has a constitutional power to pass upon requests of state agencies for funding of requested staff, as well as to make appropriation for them or refuse to do so. The legislature may also, as it did by La.R.S. 17:22(2), allocate administrative functions to the superintendent, if in its wisdom it determines this may avoid wasteful duplication of administrative employees.

VI.
Article 8, Section 11, La. Constitution of 1974, provides: "The legislature shall appropriate funds for the operating and administrative expenses of the state boards created by or pursuant to this article." The board claims that, by virtue of this constitutional provision, the legislature is required to appropriate directly to the board its operating and administrative expenses.
By Act 17 of 1976, the legislature appropriated $ 159,161.00 "for operating expenses of the Board of Elementary and Secondary Education." Item XX-XX-XX-XX. However, this appropriation was not made directly to the board. Instead it was made to a budget unit denoted as "Superintendent of Public Education Public Education, State Department of."
The constitutional provision relied upon does not provide that the legislature shall appropriate the funds to the board for its operating and administrative expenses only that it shall appropriate funds "for" the operating and administrative expenses of the board. Article 8, Section 11.[19] As previously noted, Article 3(A) provides for the board's administrative control and budgetary responsibility "as provided by law," i. e., by legislation.
We find no requirement in the constitution that the legislature must, for administrative budgetary purposes, consider the board as a budget unit separate from the department of education and must therefore make appropriations to the board itself rather than through the larger budget unit of the department.[20]
Applying the principles of judicial review earlier noted, we do not find the legislative appropriation on its face to be in violation of the constitutional authority of the board to determine educational policy for the public schools of the state; nor do we find the board's constitutional function invaded by the legislative appropriation of the funds "for" the board through a budget unit comprising a larger administrative entity also administering the educational system, as authorized by the constitution, i. e., the superintendent of education and the department of education. Such budgetary administration of the funds appropriated for the board's use is not shown on its face to violate the policy-making function conferred on the board by the constitution.
In holding this method of appropriation to be within the constitutional power of the *157 legislature to assure efficient distribution and accounting of funds appropriated for particular purposes, we do not mean to infer that the superintendent or the department can delay or restrict receipt by the board of funds appropriated for its use, insofar as not incurred contrary to law. Judicial remedy is available to the board, if the superintendent or the department unreasonably delays payment of funds appropriated for the administrative and operating expenses of the board, or if the superintendent or department refuses to pay them as incurred by the board within its constitutional and statutory authority.
It may well be that, upon address to the legislature, the legislature may see fit in the future to make appropriations directly to the board itself. Until it does so, however, the mere possibility that the superintendent or the department will somehow impede the board by delayed transmittal of the funds does not strike with facial invalidity the legislative appropriation in question.

Decree
For the foregoing reasons: We affirm the judgment of the trial court, insofar as it declared unconstitutional the repeal of La. R.S. 17:6A(8) (1975) by Section 2 of Act 455 of 1976; we reverse the judgment of the district court in all other respects, so we thus uphold the constitutionality of the remainder of Act 455 of 1976 and of the legislative appropriation at Item XX-XX-XX-XX, Act 17 of 1976, and thus annul the injunctive and mandamus relief ordered by the district court; and we enter declaratory judgment as expressed above by our opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND DECLARATORY RELIEF ENTERED IN ACCORDANCE WITH OPINION.
SUMMERS and DENNIS, JJ., dissent and assign reasons.

APPENDIX A
Be it enacted by the Legislature of Louisiana:

Section 1. Paragraphs 11, 12, 13, 14, and 15 of Subsection A and Subsection B of Section 6, Paragraphs 2, 3 and 7 of Section 7, Section 10, and Section 22 of Title 17 of the Louisiana Revised Statutes of 1950 are hereby amended and reenacted to read as follows:
§ 6. General powers of board
A. In the exercise of its supervision and control over the public elementary and secondary schools, vocational-technical and post secondary vocational-technical schools and programs except in colleges and universities, and special schools under its jurisdiction, and in the exercise of its budgetary responsibility for all funds appropriated or allocated by the state for public elementary and secondary schools, vocational-technical and post secondary vocational-technical programs and schools except colleges and universities and special schools placed under its jurisdiction, the board shall have authority to:
* * * * * *
(11) Award certificates and issue diplomas for successful completion of programs of study. All certificates and diplomas shall be prepared by the State Department of Education and shall bear the signature of the president of the board and of the state superintendent of education for public elementary and secondary education.
(12) Enter into contracts and agreements which have been recommended by state superintendent for public elementary and secondary education, in accordance with applicable law, and to the extent that funds are specifically appropriated therefore, with other public agencies with respect to cooperative enterprises and undertakings related to or associated with an educational purpose or program affecting education in the public schools under its jurisdiction. This shall not preclude the board from entering into other such contracts and agreements that it may deem necessary to carry out its duties and functions.
(13) Enter into contracts and agreements which have been recommended by the state superintendent for public elementary and secondary education, in accordance with applicable law, and to the extent that funds are specifically appropriated therefor, with private agencies with respect to cooperative enterprises and undertakings related to or associated with an educational purpose or program affecting education in the public schools under its jurisdiction.
(14) Require from parish and city superintendents of schools, through the state superintendent for public elementary and secondary education, and from the state superintendent for public elementary and secondary education, such reports as it deems necessary or desirable relating to those phases of education under the jurisdiction of the board.
* * * * * *
B. The board shall delegate to the superintendent such of its powers and duties as it *158 deems appropriate to aid the superintendent in the efficient administration of his responsibility for the implementation of the policies of the board.
§ 7. Duties, functions, and responsibilities of board
In addition to the authorities granted by R.S. 17:6 and any powers, duties, and responsibilities vested by any other applicable laws, the board shall:
* * * * * *
(2) Adopt a minimum foundation program and adoption a formula for the equitable allocation of minimum foundation funds to parish and city school systems.
* * * * * *
(7) Adopt minimum standards for the approval of each public elementary and secondary school, vocational-technical school, and special school in the state under its jurisdiction.
* * * * * *
§ 10. Approval of public schools; standards; enforcement of standards; effect of failure of a public school to meet and maintain standards
A. The State Department of Education shall approve each public elementary and secondary, vocational-technical, and special school in the state under the jurisdiction of the Louisiana State Board of Elementary and Secondary Education in accordance with minimum standards submitted by the State Department of Education and approved by the board.
B. The parish or city school board within whose jurisdiction each public elementary or secondary school is located and the administrative head of each other school covered by this section shall apply to the State Department of Education for approval on forms prescribed and furnished by the department and approved by the state superintendent. The State Department of Education shall approve each such school which it finds meets the minimum standards as adopted by the board.
C. The initial approval granted by the State Department of Education shall be reexamined at such intervals as the department shall determine in order to assure that the minimum standards fixed by the board are maintained on a continuing basis.
D. Whenever the State Department of Education determines that a school has failed to meet the minimum standards fixed by the board for initial approval or has failed to maintain such standards on a continuing basis, the department shall so inform the Louisiana State Board of Elementary and Secondary Education and the local school board in the case of a public elementary or secondary school, or administrative head of the school in the case of any other school, in writing, setting forth specific details as to the particular standard or standards, which are deficient, the action necessary for compliance therewith, and the time within which action must be taken to bring the school to minimum standards. Opportunity for a hearing within thirty days after the date on which such notification is given shall be afforded. After the hearing the department shall take action to modify or reaffirm its previous determination. If the school is aggrieved by the determination then made, the school shall have a right of appeal to the district court having jurisdiction; however, any such action shall be filed within thirty days after the date on which the department notifies the school board or administrative head, as the case may be, of its determination following the hearing. If no hearing is requested, or if an appeal to the courts is taken and the court upholds the determination of the department, such action as the department has directed shall be taken within the time set forth in the determination. The department may grant one or more extensions of time within which deficiencies must be corrected.
E. Upon a determination by the State Department of Education that the identified deficiencies have been corrected, the school shall be approved or its previous approval reinstated as the case may be. If the deficiencies are not corrected to the extent necessary to meet the minimum standards within the time fixed by the department, the school shall not be approved or, if previously approved, that approval shall be withdrawn, the school shall be placed on probation, and the school board, or head of the vocationaltechnical school or special school shall be notified in writing that the school has been placed on probation and that all state funds to which the school otherwise would be entitled under the law will be withheld unless the stated deficiencies are corrected within a stated period then fixed by the department. If such corrections are not made within the time so fixed, the department shall disapprove the school and the board shall withhold such state funds for that school until the corrections are made and the department determines that the minimum standards have been met. When state funds are so withheld, the board shall, in writing, notify the governor, the state treasurer, and the legislature of that fact and the reasons therefor. Upon a subsequent compliance with the necessities to meet the minimum standards, the school shall be approved or its approval reinstated, and the state funds to which the school thereafter is entitled shall be paid over to the school board or to the administrative head of the vocational-technical or special school.
* * * * * *
§ 22. Superintendent; functions and duties
The superintendent shall:

*159 (1) Serve as ex officio secretary of the board. As ex officio secretary, he shall have powers and functions assigned by the board, among which shall be the authority with the president of the board, to authenticate and verify official documents of the board and the submission of agenda items for consideration by the board.
(2) Provide the staff services for the board. In that regard the superintendent shall:
(a) Cause all certificates and diplomas that are to be awarded to be prepared by the State Department of Education.
(b) Make recommendations on contracts and agreements to be entered into by the board. The superintendent shall be designated as the state educational agency with respect to federal funds for those programs under the jurisdiction of the board and approved by the board and/or for those programs under the jurisdiction of the state department of education. The superintendent shall receive, administer, supervise, and direct distribution of such federal funds, except for programs for which local school boards may apply and receive direct federal grants.
(c) Prepare or obtain all reports required by the board.
(d) Prepare a minimum foundation program, a formula for the equitable allocation of minimum foundation funds to parish and city school systems, and budgets for adoption by the board and submit them to the legislature for its approval, prior to any appropriation of funds therefor, once they have been adopted by the board.
(e) Prepare the list of free school books and other materials of instruction for adoption by the board.
(f) Provide all other staff and administrative services needed by the board to carry out its constitutional and statutory mandates.
(3) Implement the policies and programs of the board and the laws affecting schools under the jurisdiction of the board.
(4) Serve as the administrative head of the State Department of Education.
(5) Employ and fix the salaries and duties of employees of the department of education, subject to applicable civil service laws, rules, and regulations, and other applicable laws.
(6) Pursuant to rules, regulations, and policies adopted by the board, offer assistance to local public school officials and the elementary and secondary schools of the state in their efforts to adopt procedures by which (a) courses of study prescribed by the board will be followed, (b) teachers will meet the standards prescribed by the board, and (c) schools will meet the standards for approval which are prescribed by law or by the board. He shall assist the parish and city school boards and teachers in securing the best possible results from their efforts, and in this connection, the public school officials in the various parishes and cities, insofar as practicable in the professional administration of the schools, shall consider the suggestions and directions of the superintendent.
(7) Make an annual report to the board, the governor, and the legislature on the condition of, the progress made, and the improvements needed in the public elementary and secondary schools. The report shall contain (a) a complete financial report on the receipts and expenditures of the department and of the various schools; (b) data concerning faculty, enrollment, graduates, courses of study, and any other information required to show the condition, progress and needs of these schools; and (c) an abstract of the reports of the parish superintendents to the state superintendent, as well as all other facts and statistics that are of interest to the public schools, and (d) such other information as is necessary to effectuate the purposes of this Paragraph.
He shall cause a sufficient number of copies of this report to be printed for distribution to the members of the board, the governor, the members of the legislature, state officials, parish school boards, libraries, and the superintendents of schools of other states and territories.
(8) File, each year and separately, all papers, reports, and public documents transmitted to him by the parish and city school boards and officials whose duty it is to report to him, and hold them in readiness for examination by the board, the governor, any legislative committee, or any interested citizen requesting any of them. He shall cause a record of all matters pertaining to his office to be kept.
(9) Report to the board any irregularity on the part of a parish or city school board or of any parish or city superintendent of schools of which he has knowledge.
(10) Conduct such conferences and meetings of school officials, superintendents, and teachers as are necessary for the promotion and advancement of education.
(11) Perform such other functions as provided by law.
Section 2. Paragraph 8 of Subsection A of Section 6 of Title 17 of the Louisiana Revised Statutes of 1950 is hereby repealed in its entirety.
Section 3. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items, or applications of this Act which can be given effect without the invalid provisions, items, or applications, and to this end the provisions of this Act are hereby declared severable.
Section 4. All laws or parts of laws in conflict herewith are hereby repealed.
DENNIS, Justice, dissenting.
The majority adroitly refrained from acknowledging the true significance of the *160 legislation in question by minutely examining each of its parts while overlooking their aggregate effect. Viewed as a whole, Act 455 of 1976 and line item XX-XX-XX-XX of Act 17 of 1976 clearly represents an attempt by the Legislature to wrest from the State Board of Elementary and Secondary Education some of its authority to "supervise and control the public elementary and secondary schools, vocational-technical training and special schools . . .and. . . have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law." La.Const.1974, Art. 8, Sec. 3. The fact that power is reserved to the Legislature to provide the manner in which this authority is to be exercised does not enable it to effectively transfer such supervision, control and funds to the Superintendent of Education. Even if such a transfer is desirable, it cannot be done constitutionally without consent of the people. Since it does not appear probable that the Legislature would have adopted any part of the legislation separately, it is regretfully our duty to declare it invalid in its entirety.
I respectfully dissent.
SUMMERS, Justice (dissenting).
This case does not present the "narrow issue" of "spelling out administrative duties of the board and superintendent" as the Court asserts. The contested Act (455 of 1976) does not so limit its effect. To the contrary, the Act contradicts and destroys the safeguards against political interference with public education entrusted to the Board by the Constitution.
By the "narrow issue" theme of the Court's opinion, each encroachment upon the Board's authority is separately analyzed without regard for the cumulative effect of the separate transgressions upon the Board's undisputed vital policy making prerogative.
Specifically, the opinion proceeds far beyond the declared "narrow issues" of the Act and fashions a form of declaratory relief which purports to determine the rights and legal relations between the Board and the Superintendent. But this end is not achieved. By its ambiguity and vacillation the Court's opinion can only lead to the fomentation of litigation and a disruption of the Board's effectiveness in public education.
I respectfully dissent.
NOTES
[1] The co-defendants are the Department of Education, administered by the superintendent, and the State Treasurer, who is required by the trial court judgment to deliver the funds appropriated for the board's expenses directly to the board.
[2] The other narrow issue presented is whether the legislature is required to appropriate funds directly to the board by Article 8, Section 11; or instead may it permissibly appropriate funds for the board's use through some other agency? This issue will be discussed in part VI below.
[3] La.Const. of 1974, Article 8, Section 1: "The legislature shall provide for the education of the people of the state and shall establish and maintain a public educational system."
[4] La.Const. of 1974, Article 8, Section 3(A):

"The State Board of Elementary and Secondary Education is created as a body corporate. It shall supervise and control the public elementary and secondary schools, vocational-technical training and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law. The board shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees."
[5] La.Const. of 1974, Article 8, Section 2: "There shall be a superintendent of education for public elementary and secondary education who, subject to provisions for appointment in lieu of election set forth in Article IV, Section 20, of this constitution, shall be elected for a term of four years. If the office is made appointive, the State Board of Elementary and Secondary Education shall make the appointment. He shall be the administrative head of the Department of Education and shall implement the policies of the State Board of Elementary and Secondary Education and the laws affecting schools under its jurisdiction. The qualifications and other powers, functions, duties, and responsibilities of the superintendent shall be provided by law."
[6] However, the constitution expressly recognized the right of the legislature by law enacted by two-third's of the elected members of each house to provide for appointment of the superintendent rather than his election. La. Constitution of 1974, Article 1, Section 20, Article 8, Section 2.
[7] In view of the construction, our trial brother held that "the power of the legislature is necessarily limited to promulgation of the enabling legislation and fiscal appropriations." He also held "that the superintendent has no power over the system other than that granted to him by the board, or necessarily implied from his position as administrative head of the Department of Education."
[8] See, for instance, the sentence in Section 3(A) immediately following the quoted one: "The board shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees."

See also South Central Bell Telephone Co. v. Louisiana Pub. Serv. Comm'n, 334 So.2d 189 (La. 1976).
[9] "In Amendment No. 4 we made just stylistic changes of tense, and in line with the consistent philosophy throughout the constitutional provisions, when we spoke about the legislature, the general intent of the membership in every instance we could determine except once or twice was they meant `by law.'"
[10] "`And shall be as provided by statute,' we shall use it in the standardized language throughout the constitution, `shall be as provided by law.'" (Italics ours.)
[11] "* * * we . . .`except as otherwise provided in,' we provided the standard language which is `except as otherwise provided by this constitution.' `Shall be fixed by the legislature,' the intent was `by law.'" (Italics ours.)
[12] "The general changes had to do with singularizing language: using the standard languagelike `by law' instead of `by statute'; * * * We use the standard language `by law' instead of `by statute.' * * * It said . . . we said, `provided by law' instead of `provided by statute' in line with the standard language being used in the constitution today."
[13] "The . . . as you see, it breaks the long sentence into two, and it follows the . . . as we have done in the other sections, the rules of omitting `such' when unnecessary, and changing `statute' to `law.'"
[14] A reason for the different treatment of these latter three boards may be the absence of overlap of power of administrative supervision and control between them and some other constitutional officer or agency. Distinguishably, the present board and the superintendent both share responsibility for the supervision of elementary and secondary education, with the consequent necessity of legislative allocation of the shared administrative powers as between the two constitutional entities.
[15] The statute also repealed La.R.S. 17:6A(8). This involves a different issue. We will discuss the constitutionality of this repeal in Part V below.
[16] The board also complains that educational units must appeal to the courts rather than to the board itself, if the department determines that a school has failed to meet the board's minimum standards. See subsection D. We see no constitutional defect of a nature impairing the board's policy-making function in this respect. It might well be deemed administratively preferable to have initial administrative review by the board itself, rather than initial judicial review by the courts, of an administrative rejection of an application as not complying with the board's minimum standards. However, the legislature has not yet seen fit to provide for this intermediate agency review, and we find no constitutional requirement that it do so.
[17] La.R.S. 17:6A(8) provides:

"Employ and fix the salaries and duties of necessary staff to assist the board in administering its affairs, in accordance with applicable civil service laws and the provisions of this Chapter. However, for the implementation of policy there shall be no duplication of staff and services which are available through the superintendent as the administrative head of the State Department of Education."
[18] Actually, the general appropriations act indicates that the board retains a small staff of eight. The board is also authorized to pay the expenses of specialists or advisory committee members appointed by the board in aid of its policy-making functions. La.R.S. 17:6A(9) (1975).
[19] Contrast this provision with Article 8, Section 12. The latter constitutionally provides that "Appropriations for the institutions of higher education shall be made to their managing boards. The funds appropriated shall be administered by the managing boards * *." (Italics ours.)
[20] We note also that, during the convention, an amendment to this article was proposed so that it would instead provide: "Appropriations by the legislature for educational purposes shall be made to and administered by the appropriate board, agency, or authority * * *." 2 Official Journal and Calendar, Constitutional Convention of 1973, p. 832 (87th day's proceedings, November 16, 1973). The amendment was withdrawn, so the original language was retained that the legislature appropriate funds "for" the boards.