479 So.2d 489 (1985)
Dr. John FOSTER
v.
BOARD OF ELEMENTARY AND SECONDARY EDUCATION.
No. 84 CA 1010.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
Rehearing Denied December 26, 1985.
*490 Delbert G. Talley, Gretna, for plaintiff-appellee Dr. John Foster.
R. Bruce Macmurdo, Steffes & Macmurdo, Baton Rouge, for defendant-appellant Bd. of Elementary and Secondary Educ.
Before LOTTINGER, COLE and CRAIN, JJ.
CRAIN, Judge.
Defendant-Appellant, the Board of Elementary and Secondary Education (BESE) appeals from a judgment of the trial court in favor of plaintiff-appellee, Dr. John Foster, which held that the transfer of Dr. Foster from his position as principal to a position as an itinerant consulting teacher was without good cause and accomplished without proper authority. Dr. Foster has answered the appeal asking for attorney's fees and reimbursement of travel expenses as salary that the trial court did not grant him.

FACTS
Dr. John Foster had been the principal of Southeast Louisiana Hospital school for fifteen years. The school is one of a number in Louisiana for mentally and physically handicapped, and emotionally disturbed children. This particular school had been under the direct supervision of the St. Tammany Parish School Board until 1979. In that year all similar special schools throughout the state were removed from the control and supervision of local school boards and were brought together to form one separate and independent district, known as Special School District # 1 (SSD # 1). SSD # 1 was to be controlled and supervised by the State Department of Education and BESE.
On April 1, 1980, the State Superintendent of Education sent a letter to BESE recommending that Dr. Foster be removed from his position as principal at Southeast. He was later notified by letter that he was being charged with dishonesty, wilful neglect and incompetency. A due process hearing committee was convened by BESE and Dr. Foster was found guilty of dishonesty and wilful neglect. The dishonesty charge was based on falsifying payroll *491 records. Dr. Foster maintained that the procedures he followed were valid under the old St. Tammany Parish system which he still used, because he was never informed of the SSD # 1's procedures to the contrary. The wilful neglect charge was based upon a finding that he had failed to implement properly a certain type of educational plan. Dr. Foster maintains he never had sufficient staff to properly implement the plan. No finding of incompetency was made at this hearing.
As a result of the findings of guilt as to wilful neglect and dishonesty, BESE submitted a recommendation to the Superintendent of Education that one of two options be pursued: 1) transfer Dr. Foster to a lateral position or 2) suspend him for two consecutive payroll periods without pay and subject him to a monitoring period of one year with quarterly monitoring reports to be filed. If the reports reflected no improvement at the end of one year, Dr. Foster was to be terminated from his position.
The superintendent chose the latter option and Dr. Foster was suspended accordingly. The monitoring team began its duties in October of 1980. Dr. Foster agreed to this remediation and decided not to appeal BESE's actions. Quarterly monitoring reports were submitted from October through March 1981. The reports initially indicated several problem areas concerning not only Dr. Foster's performance but personality conflicts and problems with the staff. The last report filed in March indicated improvement in several areas, but alleged that Dr. Foster was not effective in his role as principal and that he would not likely become effective in the future. The report concluded that regardless of the competency of any administrator placed there, major problems would remain with certain staff members.
Without a hearing or notice to Dr. Foster, on June 18, 1981, BESE's due process committee recommended his immediate termination for incompetence based on the hearing of June 23, 1980, and the reports of the monitoring team. This despite the fact that only six months monitoring was conducted, instead of the one year ordered. One week later the committee voted to give Dr. Foster another due process hearing before terminating him. Apparently, they did so due to the fact that he had never been found guilty of the incompetency charges at the original June 1980 hearing. He was informed by letter that he was to appear and answer charges of incompetency based upon the monitoring reports and charges of dishonesty and wilful neglect of duty addressed at the original due process hearing.
This second hearing convened in July 1981 and lasted three days. The only charge considered was that of incompetency. The committee went into executive session at the close of the hearing and took the matter under advisement. No further action was taken until November 19, 1981, when BESE ordered on its own motion that Dr. Foster be transferred without a loss of salary based on the July 1981 hearing. There was no formal finding on the charge of incompetency.
Dr. Foster was transferred to a new position titled "itinerant consulting teacher". This was a new position BESE created to give Dr. Foster something to do. He was placed on probationary status in this new position, but retained his tenure as a principal as required by La.R.S. 17:45(3). His basic duties in this new position were to act as an advisor to BESE and principals at the various schools within SSD # 1.
As a result of the transfer Dr. Foster filed suit in the nineteenth judicial district court seeking to be reinstated in his former position. His basic allegations were that; he was an employee of the Department of Education and BESE was without authority to order his transfer. BESE only had authority to make such a recommendation to the State Superintendent of Education. BESE acted in direct contravention of the superintendent's order to give him a one year remediation period by only giving him six months. His salary and status were diminished by the transfer and therefore *492 the entire process was conducted in violation of the teacher tenure statutes, the Administrative Procedure Act and his right to due process of law.[1]
BESE contended it had the right to transfer Dr. Foster of its own accord, and that at any rate its actions were taken in conjunction with the State Superintendent of Education. It further contended that it complied with all formal legal requirements necessary to affect such a transfer.
The trial court found that while Dr. Foster had been afforded due process of law, BESE was without authority to effect such a transfer and this power lay instead with the Superintendent of Education. The court further found that BESE only gave Dr. Foster six months remediation in violation of the Superintendent's order and that the transfer was without good cause. It found that Dr. Foster had been demoted to a position of lesser status and his salary was effectively reduced by the nonreimbursed increased travel expenses he incurred in his new position. The court ordered that Dr. Foster be reinstated as principal at Southeast. BESE has brought this suspensive appeal alleging that the court erred in finding BESE lacked authority to transfer Dr. Foster and in finding that he was transferred without good cause. Dr. Foster has answered alleging the trial court erred when it failed to grant him the transportation expenses he incurred as a result of the transfer and attorney's fees. A proper disposition of this case involves a foray into the murky waters of the state's constitution, legislative enactments and accompanying jurisprudential gloss as to who has the authority to do what with teachers working for SSD# 1.

DID BESE LACK AUTHORITY TO TRANSFER DR. FOSTER?
Appellant first contends BESE had such authority. Alternatively, appellant contends that regardless of whether BESE had specific authority or whether only the Superintendent of Education had actual authority, the two acted in conjunction with each other and cooperated in the transfer. The problem with this second contention is that the record is devoid of any indication that the Superintendent played any role in the transfer. To the contrary, the last part the Superintendent played was the acceptance and implementation of BESE's recommendation that Dr. Foster be placed under the one year remediation. There is no evidence that the Superintendent was consulted or even informed of the latter decisions.
We find it significant that not only was the earlier due process hearing initiated by the Superintendent, but he chose the "discipline" resulting from it. However, in regards to the second due process hearing, the Superintendent played no role. We find, therefore, that regardless of who ultimately had authority to effect the transfer, it was not done in conjunction or cooperation between the parties.
We now turn to a consideration of whether BESE alone had the authority to transfer Dr. Foster. After a thorough review of the law and the record before us, we agree with the trial court that BESE was without authority to transfer Dr. Foster. The trial court in its well written reasons for judgment found as follows:
"Dr. Foster suggests that the authority to transfer an employee of Special School District No. 1 such as himself is vested in the Superintendent of Education because the District is a division of the Department of Education and the Superintendent is authorized to provide the staff services for the department. Foster recognizes that BESE can sit as a due process court following a recommendation of the Superintendent, but disagrees with BESE's belief that it has the ability to effect the transfer once a decision is reached. This power, according to Dr. Foster, is vested in the Superintendent.
"Contrary to Dr. Foster's argument, BESE cites LSA-Const. Art. 8 § 3 as its *493 authority to accomplish a transfer, inasmuch as it gives BESE power to `supervise and control ... special schools under its jurisdiction ...' Additionally, BESE cites LSA-R.S. 17:1951(B) which relates to the establishment of Special School District No. 1 and provides:
"`This district shall be considered an intermediate educational unit, administered by the Department of Education with the approval of its governing authority.' BESE is the governing authority of the Department of Education as recognized in Board of Elementary and Secondary Education v. Nix, 347 So.2d 147 (La. 1977). BESE's argument is that since Special School District No. 1 is subject to its approval as an `intermediate educational unit', a term used to describe local school systems, the Superintendent of Education plays a similar role to the superintendent of a local school board and BESE acts like a local school board for Special School District No. 1 institutions. Unlike its role with general Department of Education personnel, BESE approves the administration, hiring and firing of all Special School District No. 1 employees. BESE submits that the affidavits of J. Kelly Nix [BESE Exhibit # 9] and Ray Reech [BESE Exhibit # 10] indicate that this is the case.
"Because the interpretation of a number of statutes is involved, the issue of the delineation of responsibilities of the Superintendent of Education and BESE is understandably confusing. The question of who is authorized to order the transfer of Dr. Foster depends upon whether this duty is considered to fall within the superintendent's administrative capacity to provide `all staff and administrative services needed by the board' [LSA-R.S. 17:22(2)(f)] or within BESE's power to `supervise and control the public elementary and secondary schools... and special schools under its jurisdiction.' [LSA-Const. Art. 8 § 3(A)].
"The administrative duties regarding Special School District No. 1 have been specifically given to the Department of Education in LSA-R.S. 17:1951 which provides in part,
`B. This district shall be considered an intermediate educational unit, administered by the Department of Education with the approval of its governing authority and subject to the limitations of such units which shall include no authority to levy tax.'
and by R.S. 17:1944 in the Chapter entitled `Education of Exceptional Children' which reads in pertinent part,
`A. The provisions of this Chapter shall be administered at the state level by the Department of Education, with the approval of its governing authority ...' LSA-R.S. 17:1953 relative to manpower development of education of exceptional children states:
`A. The Department of Education, with the approval of its governing authority, shall be responsible for coordinating the development and implementation of a comprehensive system of manpower training.... Comprehensive system of manpower training means a system designed to insure the availability of appropriately and adequately prepared and trained personnel necessary to carry out the purposes of this Chapter.'
The duties of the Superintendent for the Department of Education are set forth in a number of statutes including R.S. 17:21 which provides:
`A. There shall be a superintendent of education for public elementary and secondary education, ... who shall execute and implement those educational policies and programs which are under the supervision and control of the board.'
and R.S. 17:22(2) which mandates:
`The superintendent shall:
. . . . .
(2) provide the staff services for the board. In that regard the superintendent shall:
. . . . .
(f) Provide all other staff and administrative services needed by the board to carry out its constitutional mandates.'

*494 A digesting of these statutes leads the Court to rule that the authority to order a transfer is within the administrative capacity of the Superintendent. This decision is further based upon the case of Board of Elementary and Secondary Education v. Nix, 347 So.2d 147 (La. 1977) and Jackson v. Coxe, 208 La. 715, 23 So.2d 312 (La.1945). In Nix the Court said that under the Constitution BESE is given the power to determine the educational policy for the public schools of the state, however, the superintendent is responsible for the implementation of the policies adopted by the board. The Court cited the Jackson case which held that the `supervision and control' provision under the 1921 Louisiana Constitution did not grant the board exclusive control, nor could the board thereby assert its authority over administrative matters entrusted to the superintendent by the legislature. In the Nix case, the Supreme Court found that the 1974 constitutional provisions and the constitutional debates are devoid of any intent to alter this legislative power to allocate administrative supervision and control as between the new constitution's board and superintendent. Nix, at 152.
This Court is of the opinion that the legislature granted the authority to transfer Dr. Foster to the superintendent of the Department of Education because the superintendent is commanded to provide all staff services needed by the board to carry out its constitutional mandates. Therefore, the November 19, 1981 action of BESE in ordering the transfer of Dr. Foster was unauthorized and is null and void.
We find BESE's argument that its power emanates from La. Const. Art. 8 § 3 unpersuasive. It is true that the article gives BESE the power to supervise and control SSD # 1. However, this article is one giving BESE general authority to supervise and control the state's entire educational system. La. Const. Art. 8 § 3 provides in pertinent part "[BESE] shall supervise and control the public elementary and secondary schools, vocational-technical training and special schools...." We do not discern from this constitutional provision that BESE is given any greater authority over SSD # 1 than it has over the public elementary and secondary school systems.
We find further support for the trial court's conclusions in La.R.S. 36:641, et seq., pertaining to the department of education. La.R.S. 36:645(B) of this part entitled "Powers and duties of superintendent of education" provides that "[T]he superintendent shall have authority to ... b) employ, assign, and remove all personnel employed for the department on a contractual basis, and c) transfer the personnel of the department as necessary...." Dr. Foster was employed by the department of education. His contracts contained a letter head by the department of education and the seal of the Superintendent of Education and were signed by administrators of SSD # 1. BESE also signed these contracts at the bottom under a line stating "approved" by BESE.
Finally, and most significantly, we note that on November 19, 1981 the very day Dr. Foster was transferred, BESE adopted a "Common Policy and Procedure Manual" for SSD # 1. Section 3.0275b of this manual reads as follows:
Special School District No. 1 shall transfer school administrative and instructional staff from one school or program to another within the SSD # 1 when determined appropriate and necessary for the efficient operation of the District. Such transfer shall be made with the recommendation of SSD # 1 to the State Superintendent of Education and approved by SBESE. (Emphasis ours).
We find therefore that BESE's own manual shows that it is the role of the department of education to transfer personnel and that such transfers are to be reviewed and approved by BESE, confirming its role of overseer and policymaker. BESE is not generally empowered to effect such transfers of its own accord. There is, however, one situation where we find BESE would *495 have the authority to transfer Dr. Foster. We discuss this exception below in the second assignment of error. In this second assignment of error, BESE argues that the trial court erred when it found Dr. Foster's transfer was without good cause.[2]

TENURE
The essential questions here are whether the transfer was a tenure triggering act and if so was the transfer enacted pursuant to the tenure law. The teacher tenure law at issue is La.R.S. 17:45. It deals specifically with tenure for teachers (and principals) in special schools. It provides the rules and procedures whereby teachers acquire tenure and the manner in which tenured teachers can be removed or disciplined. La.R.S. 17:45(A)(2) states "[I]f a permanent teacher is found guilty by the board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, or of incompetency, or of dishonesty and ordered removed from office, or disciplined by the board...." (Emphasis added) The "board" referred to in R.S. 17:45 is BESE. This is the only statute we have found which grants BESE specific authority to directly control a teacher in SSD # 1. It is in this wording that we find BESE is granted an exception to its lack of power to transfer Dr. Foster. After a valid due process hearing and based upon findings of guilt, BESE could order the superintendent remove Dr. Foster or discipline him. Such power necessarily includes the ability to have him transferred.
BESE argues that having found Dr. Foster guilty at the original due process hearing, it was empowered to do with Dr. Foster whatever it thought best. BESE contends that the second due process hearing and eventual transfer were simply continuations of the first hearing. There are several problems with this argument. First, BESE never ordered the remediation of Dr. Foster based on the first hearing. It came up with alternative disciplinary actions and recommended that the Superintendent of Education choose one of them.
As the trial court indicated in his reasons for judgment:
In direct contravention of the order of the Superintendent, the board chose to cease the monitoring process after a period of six months. After having received two quarterly reports from the monitoring team, the Board took the matter under advisement at the April 21, 1981, due process committee meeting. [Joint Exhibit # 1]. At the June 13, 1981, due process committee meeting the committee recommended that Dr. Foster be terminated for incompetence as principal of Southeast Louisiana Hospital School effective immediately upon adoption of this recommendation by the Board. These actions of the Board constitute an abandonment of its original remedy against Dr. Foster and an indication that the Board was confident that it could have Dr. Foster terminated based on the charges to be addressed at the second due process hearing. Apparently as a result of the second due process hearing there was no finding of incompetency.
Thus, BESE gave its recommendations to the superintendent, then unilaterally tried to fire Dr. Foster after only 6 months. Whatever power BESE had to control Dr. Foster's fate as a result of the first hearing was abrogated to the superintendent by its own actions. Consequently, BESE was powerless to unilaterally order Dr. Foster transferred (as outlined above). At the very least BESE would have to find him guilty of incompetency at the second hearing. However, not enough votes could be mustered to find Dr. Foster guilty of incompetency and fire him, so BESE compromised and ordered him transferred. Dr. Foster was granted one year and he was entitled to it unless new proceedings were instituted and new findings made.

SALARY AND ATTORNEY'S FEES
Dr. Foster argues that the trial court erred in not granting him attorney's fees and damages for a loss in salary he allegedly *496 sustained. Under La.R.S. 17:45(A)(2): "If the finding of the board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he may have sustained by reason of the action of the board."
BESE never ordered a reduction in Dr. Foster's salary. In fact the transfer was made with "full pay". Dr. Foster contends, however, that the transfer amounted to a reduction in his salary due to the additional transportation expenses he has incurred.
Dr. Foster lives in a rural area between Hammond and Covington. Southeast Hospital School is in Mandeville. Dr. Foster testified that he originally commuted approximately 23 miles each way to Southeast Hospital in Mandeville. After his transfer he was assigned to SSD # 1's central office in Baton Rouge for four months. He was then assigned to the New Orleans Adolescent Hospital School (NOAH) in New Orleans, where he has remained until the time of this suit. He maintains that his assignments in first Baton Rouge and then New Orleans added significantly to the transportation expenses he incurred and effectively constitute a reduction in his "salary". He argues that both assignments were approximately an extra thirty-two miles each way and additionally that he now pays a twice daily toll to cross the Lake Pontchatrain Causeway Bridge. He estimated these expenses amounted to an additional $200-$300 a month for which he is not being reimbursed. However, he indicated that he is reimbursed for expenses "outside of NOAH" and that he never asked to be reimbursed for his additional expenses incurred by way of his longer commute.
There is authority in our jurisprudence that an effective reduction in benefits can constitute a reduction in salary. See Pizzolato v. State, Bd. of Elem. & Sec. Educ., 452 So.2d 264 (La.App. 1st Cir.1984). We also note that the teachers' tenure act was enacted to protect the job security of tenured teachers and should be liberally construed to do so. Howell v. Winn Parish School Board, 332 So.2d 822 (La. 1976); Tate v. Livingston Parish School Bd., 391 So.2d 1240 (La.App. 1st Cir. 1980). Additionally, the trial court clearly found that Dr. Foster's salary was effectively reduced by these added expenses. However, the trial court failed to render any reimbursement as requested by Dr. Foster.
BESE persuasively argues that to grant reimbursement to Dr. Foster would create a rule whereby anytime a tenured teacher is transferred to another or new school that the teacher could demand a due process finding of incompetence or expenses incurred, as the additional expense would constitute a reduction in salary. We perceive a difference, however, between a teacher being transferred from one school to another within a single parish only, and a teacher, such as Dr. Foster, being transferred from one school to another in the SSD # 1 district throughout the state. When public school teachers begin employment with a city or parish, the teachers must assume that they may be assigned or transferred at anytime within that system and that the salary received is compensation to work within that system. This legitimate expectation is based on the reasonable assumption that all such schools can be adequately reached from wherever the teacher may locate within the system.
However, Dr. Foster is a consultant for a statewide school district. He has been moved from Mandeville to Baton Rouge to New Orleans. He could just as readily be assigned to Lake Charles or Shreveport. Such transfers are not being conducted within the bounds of a single parish and therefore cannot be adequately reached from any single location he may choose to live in.
It is our opinion that such transportation and moving expenses are so onerous that they in effect constitute a significant reduction in Dr. Foster's salary and threaten his job security. The trial court, after having found that they did reduce Dr. Foster's salary, abused its discretion in not granting them. Such a transfer, if otherwise *497 properly effected, can only be made with the granting of reasonable relocation expenses or the reimbursement of additional commuting expenses. Dr. Foster's testimony indicates that he travels approximately an additional 1200 miles a month to work. In addition, he incurs a toll twice daily over the causeway. We believe that $250 a month would adequately compensate Dr. Foster in this case. BESE through the State Department of Education is ordered to reimburse Dr. Foster $250 a month from November, 1981, through finality of this judgment.
Dr. Foster argues that the trial court erred in not granting him attorney's fees. We disagree. Attorney's fees are only to be awarded in Louisiana when allowed by statute or contained in a contract. Martin v. AAA Brick Co., Inc., 386 So.2d 987 (La.App. 3rd Cir.1980). There is no evidence of any such contractual stipulation and no such statutory provision exists.
Therefore, for the above and foregoing reasons the decision of the trial court is affirmed in part, reversed in part and rendered. Appellant to pay all costs.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] We do not address the questions of whether BESE is bound by the provisions of the Administrative Procedure Act, La.R.S. 49:951 et seq., or any violation of Dr. Foster's due process rights as he has not raised these issues in his answer to BESE's appeal.
[2] The term "good cause" means in accordance with the teacher tenure laws.