COVINGTON, Chief Judge.
On November 5, 1981, Dr. John Foster filed suit number 251,975 on the docket of the Nineteenth Judicial District Court to appeal the decision of the Board of Elementary and Secondary Education transferring him from his position as principal of South *503 east Louisiana Hospital School. On June 4, 1984, judgment was rendered in favor of Dr. Foster with all costs to be paid by the defendant board. On November 19, 1985, in case number 84-CA-1010, the First Circuit Court of Appeal affirmed and amended the judgment of the district court to award Dr. Foster $250.00 a month to compensate him for his reduction in salary from November of 1981 through the “finality of this judgment.” 479 So.2d 489. The state appropriated $12,000.00 by Act No. 541 of 1986 to pay the principal amount of the judgment. The present suit concerns the payment of interest and court costs. The trial court denied plaintiffs motion for summary judgment and granted the state’s motion for summary judgment. We affirm.
The plaintiff argues the state must pay interest and court costs like any other defendant. The state argues that the final appropriation has already been made, and this court is unable to provide the plaintiff with the requested remedy. No genuine issues of material fact remain. We are presented solely with a question of law.
The waiver of sovereign immunity by the state is contained in Art. 12, Sec. 10(A) of the 1974 Constitution.
This court has previously discussed this waiver in State through DOTD v. Sugarland Ventures, Inc., 476 So.2d 970, 975 (La.App. 1st Cir.1985), writ denied, 478 So.2d 909 (La.1985).
It has become obvious in the ten years since the 1974 Constitution became effective that the waiver of sovereign immunity from suit and liability of Art. 12, Sec. 10(A) is, in reality, only a waiver of immunity from suit. The legislature may, on the authority of Art. 12, Sec. 10(C), refuse to pay judgments for which the state has been held liable by a court of law. This court lacks the power to compel the state to pay a judgment rendered against it, as the appropriation of funds by a legislative body is generally a discretionary, rather than a ministerial duty. DeLaureal Engineers, Inc. v. St. Charles Parish Police Jury, 406 So.2d 770 (La.App. 4th Cir.1981); Fontenot v. State Department of Highways, 358 So.2d 981 (La.App. 1st Cir.1978).
Additionally applicable at the time was LSA-R.S. 13:5116 which established the procedure by which judgments were to be paid. (LSA-R.S. 13:5115 to 13:5119 have since been repealed.)
LSA-R.S. 13:5116 establishes the procedure by which judgments are paid.
All judgments which are final are submitted to the attorney general for review. The attorney general then submits the judgment to the Joint Legislative Committee on the Budget. The text of Section 5116 is as follows:
A. A final judgment may be eligible for payment from the fund only upon presentment of a certified copy of a judgment against the state, and an affidavit of the clerk of court wherein the judgment was last rendered attesting that the judgment is not subject to further devolutive or suspensive appeal or review by writ. In lieu of the affidavit, the judgment creditor may present a sworn statement from the attorney of record for the state containing a waiver of the state’s right to appeal or apply for writs and the concurrence in such waiver by the attorney general of the state of Louisiana.
B. Costs of court and attorney’s fees, if any, may be paid in accordance with the judgment. All such costs shall be submitted to the attorney general by sworn affidavit of the judgment creditor or his attorney.
C. Upon request of the judgment creditor, the attorney general shall review the documentation submitted, and if he finds the documentation to be in order, he shall submit the judgment to the Joint Legislative Committee on the Budget. The Joint Legislative Committee on the Budget may, in its discretion, approve payment of all or a portion of the judgment or reject payment of the entire judgment. If payment of all or a portion of judgment is approved by the Joint Legislative Committee on the Budget, then the attorney general shall submit *504 the judgment to the state treasurer for payment.
D. Any judgment creditor who believes the attorney general or the Joint Legislative Committee on the Budget has wrongfully withheld the processing of his judgment may proceed to seek satisfaction of his judgment through a special appropriation by the legislature of Louisiana.
E. Upon receipt of the judgment from the attorney general, the state treasurer shall pay the judgment to the judgment creditor in the amount approved by the Joint Legislative Committee on the Budget.
[Emphasis added.]
Plaintiff also depends on LSA-R.S. 13:5117 to support his position. In his brief he contends:
LSA-R.S. 13:5117 states that:
‘Interest shall be paid at the rate and from the date fixed in the judgment ... ’
It seems obvious that the clear intent of the legislature was that interest and court costs be paid in cases in which the principal amount of the judgment is paid. There certainly is no policy against it. To the contrary, any such policy would lead to discretionary action by the Joint Legislative Committee on the Budget or the Attorney General on a case by case basis and certainly might lead to discrimination.
However, LSA-R.S. 13:5117 was not the law in effect at the time the petition was filed. This section would not apply unless it were found to be procedural and therefore applied retroactively from July 22, 1982, the date the Governor approved this amendment.
Even if LSA-R.S. 13:5117 were applicable to this case, our decision would be the same.
In plaintiffs brief we find the following: It does allow the Committee to reject payment of all or part of a judgment, however if the Committee does this paragraph “D” provides that the judgment creditor may then proceed to seek satisfaction of his judgment through a special appropriation of the legislature. Oddly enough when Dr. Foster did this the legislature did not pass on the bill. Instead the legislature passed Act 581 which did not provide for interest or court costs. This was not the bill that Representatives Strain and Scoggin had agreed to submit.
[Emphasis added.]
The above language evidences legislative intent to pay the principal judgment and no more. Here we have action by the legislature refusing to pay costs and interest.
“Oddly” enough or otherwise, this Court will not consider compelling the legislature to appropriate funds it has previously decided not to appropriate. A rare instance in which this court would consider such action would be to compel the legislature to fund the court system of the state under the doctrine of the judiciary’s inherent power, a situation not remotely at issue here.
This case presents us with a specific judgment upon which the legislature has already acted. Also, the legislature has repealed sections in Title 13 that deal with the payment of judgments rendered against the state. Therefore, we do not consider the state’s obligation to pay costs and interest on future judgments.
The judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.